```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
  GREGORY C. MORSE,                                               :
                                                                  :
                                        Appellant,                :      1:14-cv-5800-GHW
                                                                  :
                  -against-                                       :      MEMORANDUM OPINION
                                                                  :          AND ORDER
  RESCAP BORROWER CLAIMS TRUST,                                   :
                                                                  :
                                        Appellee.                 :
----------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/2015

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

Appellant Gregory Morse brings this appeal from a decision of the United States Bankruptcy Court for the Southern District of New York, expunging his claims against appellee Rescap Borrwer Claims Trust (the "Trust"). On June 6, 2014, the Bankruptcy Judge issued an opinion sustaining the Trust's objections to and thus expunging Mr. Morse's claims against the Trust. Mr. Morse filed a notice of appeal to this Court on July 28, 2014, and timely filed his opening brief on August 11, 2014. The Trust filed their brief in opposition on August 25, 2014, and Mr. Morse filed his reply on September 7, 2014.

For the reasons outlined below, Mr. Morse's appeal is denied.

## II. BACKGROUND[1]

### a. Proceedings in the Bankruptcy Court

In any bankruptcy proceeding, a creditor may file a proof of claim, asserting a right to payment by the debtor. *See* 11 U.S.C. § 101(10)(A); Fed. R. Bankr. P. 3001(a). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief

---

[1] Unless otherwise noted, facts were taken from the Bankruptcy Court's opinion and the parties' briefs.

concerning the debtor . . . ," and a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(10)(A); 101(5)(A). A properly-filed proof of claim serves as *prima facie* evidence "of the validity and amount of the claim." Fed. R. Bankr. P. 3001.

This bankruptcy proceeding began on May 14, 2012, when Residential Capital, LLC and a group of other entities filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code. On December 11, 2013, the Bankruptcy Court confirmed the bankruptcy plan, which became effective on December 17, 2013. The Trust was set up to manage the bankruptcy process on behalf of the debtors, and was given the authority to object to claims. *See* Bankruptcy Court Opinion at 3.

Mr. Morse filed two claims in this bankruptcy proceeding, each for $6,475,662: claim number 5680 against GMACM and claim number 5682 against Homecomings. Bankruptcy Court Opinion at 1, 9. The Trust filed objections to both claims based on Mr. Morse's failure to state a basis for liability. Mr. Morse filed a response, the Trust filed a reply, and the Bankruptcy Court scheduled a hearing on the objections for May 15, 2014. Bankruptcy Court Opinion at 1-2.

On May 7, 2014, Mr. Morse requested an adjournment of the hearing. Notice of Adjournment, Bankruptcy Dkt. No. 6880. The Bankruptcy Court denied Mr. Morse's request in an order allowing him to appear for the hearing by telephone and stating that "[i]f he chooses not to appear, the Court will take the matter under submission without argument by any of the parties and the objection will be decided on the papers alone." Order Denying Motion for Adjournment, Bankruptcy Dkt. No. 6931, at 1. Mr. Morse did not appear in person or by phone, so the Bankruptcy Court did not hear argument on the objections to his claims. *See* Transcript, Bankruptcy Dkt. No. 6998, at 5-6. On June 6, 2014, the Bankruptcy Court issued an opinion sustaining the objections and expunging both of Mr. Morse's claims.

### b. Underlying Action in Texas

The basis for both of Mr. Morse's claims is a lawsuit he filed in Texas against debtors GMACM and Homecomings and various other entities.[2] *See* Bankruptcy Court Opinion at 5; Proof of Claim No. 5680, Bankruptcy Dkt. No. 6743-2, at 2; Proof of Claim No. 5682, Bankruptcy Dkt. No. 6743-3, at 2 (each stating basis for claim as "Rico Fraud Complaint Filed in E. District Of Texas Federal Court"). In his amended complaint in the Texas case, Mr. Morse: (1) sought a declaratory judgment on various grounds regarding the status of the title and mortgage to his property; (2) requested an accounting; and (3) asserted claims for: (a) fraud; (b) breach of contract; (c) violations of the Texas Mortgage Broker License Act; (d) violations of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act; (e) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (f) violations of the Texas Deceptive Trade Practices Act. *See* Amended Complaint, E.D. Tex. Dkt. No. 14, at ¶¶ 112, 138, 150, 162-75.

On September 10, 2012, GMACM and Homecomings filed their Notices of Bankruptcy in the bankruptcy action underlying this case, and joined the other defendants in filing a motion to dismiss the Texas case. Bankruptcy Court Opinion at 7. Pursuant to the Bankruptcy Court's Foreclosure Stay Relief Order, Bankruptcy Dkt. No. 774, all claims against GMACM and Homecomings in the Texas case were stayed, except those for declaratory judgment based on the validity of the lien on Mr. Morse's property. Bankruptcy Court Opinion at 7.

On August 13, 2013, the Magistrate Judge in the Texas case recommended dismissing with prejudice all claims against the non-debtor defendants and all non-stayed claims against GMACM and Homecomings. Report and Recommendation, E.D. Tex. Dkt. No. 50, at 21. With regard to the stayed claims, the Magistrate Judge noted that:

> upon the lifting of any stay, the analysis in this report finding that Plaintiff has stated no statutory or common law fraud, breach of

---
[2] Case No. 4:12-cv-375 in the Eastern District of Texas.

> contract, RICO, DTPA, Texas Mortgage Broker License Act, Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, accounting or "other" claims against [the non-debtor defendants] would be equally applicable to Homecomings and GMAC, and, upon the lifting of the stay, a separate report and recommendations will be entered recommending that they be applied accordingly.

*Id.* On September 25, 2013, the District Court Judge adopted the Magistrate Judge's Report and Recommendation and dismissed the Texas case, finding that Mr. Morse "has not stated any claim here and is not entitled to any of the relief he seeks." Order, E.D. Tex. Dkt No. 73, at 2.

### III. LEGAL STANDARDS

#### a. Proof of Claim Process

Under 11 U.S.C. § 502, a claim is "deemed allowed, unless a party in interest . . . objects." Once a party objects—as the Trust did here—courts employ a burden-shifting framework to assess the validity of a claim. *See In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) *aff'd*, 221 B.R. 692 (S.D.N.Y. 1998) *aff'd*, 173 F.3d 846 (2d Cir. 1999). Because the proof of claim is *prima facie* evidence of the validity and amount of the claim, "the objector bears the initial burden of persuasion." *In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *see also* Fed. R. Bankr. P. 3001(f). The objector's burden is to "produce[ ] 'evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *In re Oneida Ltd.,* 400 B.R. at 389 (quoting *In re Allegheny Intern., Inc.,* 954 F.2d 167, 173–174 (3d Cir. 1992)). Once the objector has produced sufficient evidence, the burden shifts back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.* Thus, "[u]ltimately it is the claimant . . . who bears the burden of persuasion as to the allowance of [his] claim." *In re Residential Capital, LLC*, No. 13-cv-8317 (PAE), 2014 WL 1760312, at *6 (S.D.N.Y. May 1, 2014) (quoting *In re Feinberg*, 442 B.R. 215, 220–21 (Bankr.

S.D.N.Y. 2010)). "The claimant must prove the claim, not sit back while the objector attempts to disprove it." *In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. at 323.

### b. Scope of Review

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy courts, as well as non-final, interlocutory orders under specific circumstances or with leave of the bankruptcy judge. *See* 28 U.S.C. § 158(a). An order of a bankruptcy court is final for purposes of an appeal to a district court where—as here—it "finally dispose[s] of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (emphasis and internal quotation marks omitted).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision[ ] below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). But the district court may not consider evidence outside the record. S*ee In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994) (quoting *Radix Org., Inc. v. Mack Trucks, Inc.,* 602 F.2d 45, 48 (2d Cir. 1979) ("We will not reverse . . . on the basis of arguments not presented below unless our failure to do so will result in a possible miscarriage of justice."); *see also, e.g.*, *In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012) (citing *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.,* 419 F.3d 115, 126 (2d Cir. 2005)); *In re Best Payphones, Inc.*, 432 B.R. 46, 60 (S.D.N.Y. 2010) *aff'd*, 450 F. App'x 8 (2d Cir. 2011); *In re MacMillan, Inc.*, No. 96-cv-19 (DLC), 1996 WL 328743, at *3 (S.D.N.Y. June 13, 1996) *aff'd,* 107 F.3d 3 (2d Cir. 1997).

### c. Standard of Review

District courts will overturn a bankruptcy court's factual findings only if clearly erroneous, but must conduct a *de novo* review of its legal conclusions. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990). Clear error is a high bar—a district court may overturn a bankruptcy judge's factual finding only if "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district court should not overturn a bankruptcy court decision if an error is harmless, meaning the error "is not inconsistent with substantial justice or does not affect the substantial rights of the parties." *In re Cavalry Const., Inc.*, 428 B.R. 25, 42 (S.D.N.Y. 2010) *aff'd sub nom. In re Cavalry Const.*, 425 F. App'x 70 (2d Cir. 2011) (quoting *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997)).

## IV. DISCUSSION

Because he is proceeding *pro se*, the Court will liberally construe Mr. Morse's submissions and consider them as presenting issues for appeal and explaining his purported bases for appeal. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*") (emphasis in original). Mr. Morse's bases for appeal fall into four categories: (1) alleged factual errors; (2) alleged legal errors; (3) alleged procedural errors; (4) actions showing bias on the part of the Bankruptcy Judge.

### a. Factual Questions

As noted above, the Bankruptcy Court's factual findings are subject to clear-error review and will be overturned only if this Court "is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008) (quoting *United States*

*v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). This Court will not overturn any factual findings that it deems harmless. *See In re Cavalry Const., Inc.,* 428 B.R. 25, 42 (S.D.N.Y. 2010) *aff'd sub nom. In re Cavalry Const.,* 425 F. App'x 70 (2d Cir. 2011). Federal Rule of Bankruptcy Procedure 9005 makes the harmless error rule applicable to bankruptcy proceedings. That rule states:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.

The factual errors Mr. Morse asserts the Bankruptcy Court made, for example, misstating the number of claims Mr. Morse filed and misstating whether Mr. Morse's property has been foreclosed upon,[3] had no bearing on the Bankruptcy Court's decision, nor did they affect either party's substantial rights. If these are errors, they are utterly harmless. Thus, the factual errors alleged by Mr. Morse do not provide a basis for the Court to overturn the decision of the Bankruptcy Court.

### b. Legal Questions

Mr. Morse's amended complaint in the underlying Texas case forms the basis for his claims here. *See* Proof of Claim No. 5680, Bankruptcy Dkt. No. 6743-2, at 2; Proof of Claim No. 5682, Bankruptcy Dkt. No. 6743-3, at 2. The Bankruptcy Court found, and Mr. Morse does not dispute, that federal pleading standards apply to a proof of claim. The pleading standards established in Federal Rules of Civil Procedure 8(a)(2) and 9(b) will guide the Court's analysis of Mr. Morse's claims. *See In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, Bankruptcy Courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.").

---

[3] *See* Appellant's Brief, Dkt. No 10, at 6, 10.

Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this to require pleading of "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy this heightened standard, with regard to each of his fraud claims Mr. Morse must: "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal alterations and quotation marks omitted).

### i. Texas Fraud Claims

Mr. Morse's claim rests on a number of fraud claims governed by Texas law. Following a *de novo* review of the Bankruptcy Court's analysis, the Court concludes that the Bankruptcy Court properly rejected these claims.

Under Texas law, the elements of a claim of common law fraud are that:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

8

*Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).  Mr. Morse also cites to a Texas fraud statute, which states:

> (a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a: (1) false representation of a past or existing material fact, when the false representation is: (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract; or (2) false promise to do an act, when the false promise is: (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract.

Tex. Bus. & Com. Code Ann. § 27.01 (West).  Mr. Morse's fraud claims do not meet the heightened pleading standard of Rule 9(b) because he fails to identify with particularity "the time, place, speaker, and content of the alleged misrepresentations."  He makes exactly the sort of "formulaic recitation[s] of the elements of a cause of action" that the Supreme Court found wanting in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Mr. Morse also brought claims under the Texas Deceptive Trade Practices Act, which provides relief for consumers who are the victims of deceptive trade practices.  Tex. Bus. & Com. Code Ann. § 17.41-.63 (West).  The term "consumer" is defined in that statute as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services."  *Id.* at § 17.45(4).  Loans are not considered goods or services under the statute.  *See Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. 2007); *Maginn v. Norwest Mortgage, Inc.*, 919 S.W.2d 164, 166 (Tex. App. 1996) (citing *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174–75 (Tex. 1980)).  Thus, Mr. Morse does not qualify as a "consumer," and, therefore, he cannot recover under the Texas Deceptive Trade Practices Act.

The Bankruptcy Court properly rejected all of Mr. Morse's state law fraud claims.

### ii.   Other Texas State Law Claims

Mr. Morse also asserted a claim for breach of contract under Texas law. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex. App. 2001)). To sustain such a claim under Texas law, courts require plaintiffs to "point to a specific provision in the contract that was breached by the Defendant." *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011). Mr. Morse has not done so, therefore, he has not demonstrated that he "is entitled to relief" with respect to his breach of contract claim, as required by Rule 8(a)(2).

Mr. Morse also brought claims under the Residential Mortgage Loan Company Licensing and Registration Act, Tex. Fin. Code Ann. §§ 156.001-.508 (West), also known as the "Texas Mortgage Broker License Act." He alleges that the debtors are liable to him under section 406, which states:

> (b) A person who received money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a residential mortgage loan originator without an active license or being exempt under this chapter is liable for damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received, as may be determined by the court. An aggrieved person may recover damages under this subsection in a court.

Tex. Fin. Code Ann. § 156.406 (West). To qualify as an "aggrieved person" entitled to damages under the statute, "the claimant must have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer." *Dohalick v. Moody Nat. Bank*, 375 S.W.3d 537, 541 (Tex. App. 2012). Mr. Morse's claims do not meet the Rule 8(a)(2) standard because he fails to identify which

10

of the defendants in that action were unregistered, and also fails to plead facts sufficient to show that he qualifies as an "aggrieved person" under the statute.

Mr. Morse also brought claims under the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, Tex. Fin. Code Ann. §§ 157.001-032 (West). He alleges that "one or more of the defendants . . . appear to be unregistered" as required by section 157.003 ("A person must register under this chapter before the person may conduct the business of a mortgage banker in this state."). Again, his claims do not meet the Rule 8(a)(2) standard because he fails to identify which of the defendants were unregistered.

Following *de novo* review of the Bankruptcy Court's rulings, the Court finds that the Bankruptcy Court properly rejected all of Mr. Morse's non-fraud-based state law claims.

### iii. RICO Claims

Mr. Morse's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") were also properly rejected by the Bankruptcy Court. Mr. Morse has two pleading burdens under RICO: "First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976)"; and only after meeting that first burden can he move to the second, where he "must allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (quoting 18 U.S.C. § 1964(c) (emphasis added)). To carry the initial pleading burden, Mr. Morse must properly allege "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)-(c)).

To take just one example of how Mr. Morse's RICO claim fails, he does not properly allege the existence of an enterprise. The RICO statute defines an enterprise as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. An enterprise is not simply the "pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (internal quotation marks omitted). The existence of an enterprise must be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* Mr. Morse offers no facts to show that the defendants in the underlying action functioned as an enterprise, thus he fails to state a claim under RICO.

The Bankruptcy Court properly rejected Mr. Morse's RICO claims.

### c. Alleged Procedural Errors

Mr. Morse's alleged procedural errors fall into two categories: (1) those resulting from his failures to comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Court's orders; and (2) those falling outside of this Court's jurisdiction. Examples of the former include his claims that the Bankruptcy Court ignored exhibits that he did not serve on the Trust and took into account information from materials Mr. Morse submitted but did not wish the Bankruptcy Court to consider. *See* Appellant's Brief, Dkt. No. 10, at 5, 7. Examples of the latter include the Bankruptcy Court's denial of Mr. Morse's request for an adjournment and an alleged *ex parte* conversation between an attorney for the Trust and Judge Glenn's law clerk. *Id.* at 4, 7-8. The Court will liberally construe Mr. Morse's complaint as making a due process argument with respect to the alleged procedural errors, and will thus review these questions *de novo*. *See In re MacMillan, Inc.*, No. 96-cv-19 (DLC), 1996 WL 328743, at *3 (S.D.N.Y. June 13, 1996) *aff'd,* 107 F.3d 3 (2d Cir. 1997) (reviewing alleged "procedural errors" *de novo* because court is determining whether conduct satisfies the legal standard of due process).

"[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Edwards v. I.N.S.*, 59 F.3d 5, 8-9 (2d Cir. 1995) (collecting cases); *In re Truong*, 388 B.R. 43, 45 (S.D.N.Y. 2008) (applying rule to *pro se* litigants in bankruptcy cases). The first category of procedural errors occurred as a direct result of Mr. Morse's failure to comply with both the Federal Rules of Bankruptcy Procedure and the Bankruptcy Court's orders. The Bankruptcy Judge, as any trial judge, has broad discretion in how to conduct litigation. *See In re MacMillan, Inc.*, 1996 WL 328743, at \*4 (citing *United States v. Blackwood,* 456 F.2d 526, 529 (2d Cir. 1972) ("[A] trial judge must be afforded wide latitude in management of the courtroom")). The Bankruptcy Court afforded Mr. Morse a meaningful opportunity to be heard, and he squandered that opportunity by failing to comply with basic rules and orders. The Court finds no error in the Bankruptcy Court's procedural decisions.

The second category of Mr. Morse's procedural claims fall outside the jurisdiction of this Court and will not be reviewed. *See id.* at \*3 ("This Court's jurisdiction is limited to the issues decided by the Bankruptcy Court . . . . [C]harges of criminal (or tortious) behavior are not reviewable on appeal to the extent they were not presented to the Bankruptcy Court."); 28 U.S.C. § 158(a); *see also* Section III.c., *supra*.

The Court notes that as with most of Mr. Morse's alleged factual errors, if any of these procedural decisions were in fact erroneous, they would also be harmless. *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order."); *In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993) ("The harmless error rule has been invoked in the bankruptcy context where procedural irregularities[ ] would not have had an effect on the outcome of the case." (internal alterations and citation omitted)).

**d. Recusal**

A significant portion of Mr. Morse's submissions call for the bankruptcy judge's recusal, yet there is no record of any recusal motion being filed during the bankruptcy proceedings. This Court will not entertain argument regarding any matters not raised in the Bankruptcy Court. *See* 28 U.S.C. § 158(a); Section III.b., *supra*.

**V. CONCLUSION**

For the reasons set forth above, the Bankruptcy Court's June 6, 2014 order disallowing and expunging Mr. Morse's claims is affirmed. The Clerk of Court is directed to terminate all pending motions and to close this case.

SO ORDERED.

Dated: January 26, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge